IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

CARLOTTA COLLINS

    Plaintiff,　　　　　　　　　　　　　　　　NO.

　　　　　　　　　　　　　　　　　　　　　　　　HON.

CITY OF DETROIT, dba DETROIT WATER
AND SEWAGE DEPARTMENT,
a municipal corporation,


    Defendant.

_____

CARLA D. AIKENS, P.L.C
CARLA D. AIKENS (P69530)
AUSTEN J. SEAROUSE (P84852)
Attorneys for Plaintiff
615 Griswold, Suite 709
Detroit, Michigan 48226
844-835-2993
Carla@aikenslawfirm.com
austen@aikenslawfirm.com
_____

# **COMPLAINT**

*Plaintiff, by and through her attorneys, asserts there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.*

    Carlotta Collins, by and through her attorney, CARLA D. AIKENS, P.L.C., submit the following Complaint against DEFENDANT City of Detroit dba Detroit Water and Sewage Department.

1

## JURY DEMAND

COMES NOW PLAINTIFF, Carlotta Collins, and hereby make her demand for trial by jury.

## JURISDICTION

1. Plaintiff Carlotta Collins was a resident of Wayne County in the State of Michigan at all times relevant to this action.

2. Defendant City of Detroit dba Detroit Water and Sewage Department is the municipal corporation in charge of operating and overseeing the employment of Plaintiff.

3. All relevant actions giving rise to this complaint took place in Wayne County in the State of Michigan.

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

5. This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue of this Court is proper pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

7. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL ALLEGATIONS

8. Plaintiff is an 40-year-old African American woman.

9. Plaintiff began working for Defendant on or about March 18, 2022, in the billing department.

10. During the course of her employment, there developed a pattern and practice of discrimination developed around April 1, 2022 involving the Billing Manager.

11. This Billing Manager, along with others within the office, disciplined, scrutinized, and terminated African-American women at a higher rate than their white counterparts.

12. An example of such treatment occurred during May of 2022, when Ms. Collins took a leave of absence.

13. Her leave went from May 2, 2022, to May 31, 2022 with a planned return to work date on June 1, 2022.

14. It is beyond dispute that Ms. Collins leave from May 2, 2022, to May 31, 2022, encompassing 29 days.

15. The Human Resource Labor Relations Supervisor forced Ms. Collins to take a drug test in violation of Defendant's own policy on the same.

16. Upon information and belief, Defendant's policy requires a drug test for any employee on leave for 30 days or longer.

17. Ms. Collins leave was not 30 days or longer and therefore she should not have been subjected to the drug test.

18. Despite knowing this was a violation of company policy, Ms. Collins complied with the test, but never received the results of the test.

19. She immediately reached out to her Union Representative to levy complaints about the harassment she was experiencing.

20. After that complaint, the environment became hostile towards Ms. Collins by:

   a. Forcing her to use sick time for company business;

   b. Verbally berating her during meetings;

   c. Having her evaluations used as a means to silence valid concerns;

   d. Belittling and disrespecting her;

   e. Chastising her for seeking union representation during meetings;

   f. Threatening to cancel meetings because her direct supervisors did not want union representation present;

   g. Giving her corrective action to silence her complaints and/or feelings; and

   h. Other such activities to be discovered during discovery.

21. On or about August 24, 2021, Ms. Collins had a surprise meeting with Mr. Facaeanu and Danielle Wooten regarding task assignments due to extended leaves being taken within the team.

22. During the meeting, Facaeanu became hostile at Ms. Collins asking questions and exclaimed, "Carlotta, what is this with you? Didn't we just give you a 5 rating on your evaluation? Now you're not happy? I think you have a personal vendetta with me."

23. Facaeanu avoided Ms. Collins after this meeting and made comments to Wooten about Ms. Collins being "not happy."

24. The following day, Facaeanu and Ms. Collins had a meeting to discuss the behavior of Facaeanu in the meeting the day prior.

25. Facaeanu again became hostile and belittled and bullied Ms. Collins, who asked if she should have union representation during meetings with Facaeanu going forward.

26. Facaeanu responded "I won't stop you. You can invite your union to our meetings."

27. Upon information and belief, Facaeanu does not possess the ability or authority to deny Ms. Collins her valid union representation.

28. On September 8, 2021, Ms. Collins had a meeting with Facaeanu, where she invited the union president, Tracy Reynolds.

29. Ms. Collins had expressed her stress, anxiety, and frustrations with the treatment she was receiving from Facaeanu.

30. Ms. Collins and Ms. Reynolds met with Facaeanu and Carolos Vazquez, Ms. Collins' direct supervisor.

31. Facaeanu and Vazquez were unaware that Ms. Reynolds would be in attendance, and they threatened to cancel the meeting after seeing Ms. Reynolds in attendance.

32. Facaeanu stated Ms. Reynolds should not be there as "this isn't a disciplinary action meeting."

33. Ms. Reynolds replied "It doesn't have to be a disciplinary action meeting. Ms. Collins has the right to have union representation if she so chooses."

34. The meeting remained tense due to Facaeanu's reaction, as the parties began to discuss the issues from the August 24th and 25th meetings.

35. Facaeanu did not recount the events accurately, causing Ms. Collins to become upset and leave the meeting to collect herself.

36. Ms. Reynolds supported Ms. Collins and helped her return to finish the meeting between all of the parties involved.

37. On October 12, 2021, a meeting was held with Vasquez, Facaeanu, Ms. Reynolds, and Ms. Collins.

38. Upon arrival, Ms. Collins and Ms. Reynolds were surprised to learn the purpose of the hearing was a disciplinary corrective action against Ms. Collins for alleged "inconsistent behavior."

39. At no time prior to the hearing were Ms. Collins and Ms. Reynolds made aware of the purpose of the meeting or the alleged reprimand.

40. Ms. Reynolds stated "You can't discipline Ms. Collins for being emotional in a meeting with her union representative in attendance. We will grieve this accusation because you can't reprimand her for being emotional in a meeting. She's human."

41. This meeting was a clear attempt to harass, intimidate, and discriminate against Ms. Collins.

42. Ms. Collins pushed through this clearly hostile situation and continued to perform work with exceptional punctuality.

43. During the beginning of 2022, Ms. Collins reached out to Vasquez regarding her mid-term performance evaluation.

44. Vasquez repeatedly dodged the question and eventually told Ms. Collins that he would receive the paperwork for the mid-term review on April 1, 2022.

45. Shortly after informing Ms. Collins of the above, Vasquez surprised Ms. Collins with a notice of disciplinary action set for April 1, 2022.

46. On April 11, 2022, Facaeanu attended the disciplinary corrective action hearing with Terecia White, a union representative, and informed Ms. Collins and Ms. White that he never investigated the alleged issue.

47. He stated that he relied on personal feelings and private conversations with other employees about the alleged disruptive behavior.

48. Facaeanu suspended Ms. Collins for three days, from April 12 to April 14.

49. Facaeanu and Vasquez continued to cause a hostile environment for Ms. Collins, to the point that her work has been affected.

50. The treatment differences that Ms. Collins experienced were due to Ms. Collins' race and gender.

51. Upon information and belief, Facaeanu has a history of mistreating and discriminating against women in his department.

52. At least four female employees of color have left the department due to his sexist, bullying, hostile, and otherwise intimidating behavior.

53. Upon information and belief, Facaeanu has stated that "women are emotional" when speaking about individual qualifications of members of his team.

54. One of the women Facaeanu discriminated against resigned, with three others moving to another team to avoid the treatment Ms. Collins is currently enduring.

## VIOLATION OF THE RIGHT TO MAKE AND ENFORCE CONTRACTS AND TO THE FULL AND EQUAL BENEFIT OF THE LAW PURUSANT TO 42 U.S.C. § 1981

55. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

56. This law entitles a person of color to equal opportunity and treatment in employment.

57. When an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

58. A person is also entitled to file suit and recover damages under Section 1981 for retaliation for opposing or reporting violations of Section 1981, or for participating in an investigation of a violation of Section 1981.

59. Ms. Collins belongs to a protected group and was subjected to unwelcome harassment based on her race, including a hostile work environment.

60. Defendant knew or should have known of the harassment but took no prompt remedial action.

61. Ms. Collins was subjected to ridicule, insult or other improper conduct based on her race.

62. The harassment was constant, obscene, obnoxious, and shocking to the conscience of the ordinary person.

63. The harassment was severe and pervasive, interfering with the terms and conditions of her employment with Defendant.

64. The constant harassment for over a year was severe and humiliating.

65. Ms. Collins informed Defendant, through its agents, of the hostility on at least three different occasions and made reasonable efforts to prevent hostility.

66. These actions over a year period leading up to and including the filing of this instant complaint constitute the required adverse employment action prohibited by Section 1981.

67. The harassment and termination were sufficiently severe or pervasive to alter the conditions of Ms. Collins' employment with Defendant.

68. The harassment was objectively and subjectively offensive.

69. The disparaging racial treatment or other improper conduct was unwelcomed and undesirable or offensive to Ms. Collins.

70. The harassment of Ms. Collins altered a term, condition, or privilege of her employment at Defendant.

71. A reasonable person would find that the harassment created and was abusive working environment.

72. Employees of Defendant participated in the harassment of Ms. Collins.

73. Defendant knew or should have known of the harassment and failed to take prompt, remedial action to eliminate the harassment.

74. Defendant has a pattern and practice of discriminating based on race and retaliating against those who oppose or report discrimination.

75. Ms. Collins opposed Defendant denying persons the "right to make" contracts and denying the same "security of persons and property as is enjoyed by white citizens" in the United States as required by federal law. See 42 U.S.C. § 1981.

76. Defendant treated Ms. Collins adversely after she opposed and reported unlawful discrimination.

77. Defendant engaged in material adverse actions against Ms. Collins, that might well dissuade a reasonable person from opposing or reporting the discrimination had they known they would face the adverse actions.

78. Defendant violated the federal statute by intentionally discriminating and retaliating against Ms. Collins; and, as a direct result of the discrimination and retaliation caused damages to Ms. Collins.

79. The liability can be either actual or constructive under the *McDonnell Douglas* framework.

80. Defendant knew or should have known that its employees were discriminating against African Americans and should have taken corrective action to prevent the discrimination within its control.

81. Prevention is the best tool for the elimination of harassment.

82. Defendant did not take the steps necessary to prevent the harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment, and developing methods to sensitize all concerned.

83. Ms. Collins sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which she is entitled to recovery under her causes of action.

84. Ms. Collins is also entitled to declaratory relief that a violation has occurred.

85. . Ms. Collins is also entitled to equitable relief in the form of reinstatement and an injunction against future discrimination or retaliation.

86. Ms. Collins is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

87. Ms. Collins is also entitled to receive punitive damages because Defendant engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

## COUNT II
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

88. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

89. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of the ELCRA.

90. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to harass or discriminate against an employee because of their race or skin color.

91. A respondeat superior relationship existed because Mr. Facaeanu had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of the Plaintiff's daily work activity, as alleged in the statement of facts.

92. Plaintiff is an African-American woman, and, as a result, is a member of a protected class, pursuant to the ELCRA.

93. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

94. The communication and conduct were unwelcomed.

95. This unwelcomed conduct and communication were intended to or in fact did substantially interfere with Plaintiffs employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

96. Plaintiff continually notified and complained to Defendant through its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

97. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

98. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## DISCRIMINATION ON THE BASIS OF SEX/GENDER IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

99. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

100. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

101. A respondeat superior relationship existed because Schiefer had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiffs daily work activity, as alleged in the statement of facts.

102. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee because of sex or gender.

103. Plaintiff is a woman, and, accordingly, is a member of a protected class for the purposes of the ELCRA.

104. Plaintiff was subjected to communication and conduct on the basis of their status as a member of this protected class including but not limited to: being constantly undermined and never listened to regarding issues raised in her complaints, surprise disciplinary actions, the refusal of Defendant to do anything about Plaintiffs complaints, and other such conduct as described in this Complaint.

105. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiffs employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

106. Plaintiff continually notified Defendant and its agents of unwelcomed conduct and communication; however, Defendant failed to remedy the same.

107. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

108. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

109. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## HOSTILE WORKPLACE EVIRONMENT IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

110. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

111. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

112. A respondeat superior relationship existed because Schiefer and other agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiffs daily work activity, as alleged in the statement of facts.

113. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

114. Plaintiffs supervisors started abusive conduct, from the day Ms. Collins returned from leave with said hostile and intimidating continuing.

115. Moreover, Plaintiffs continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of misbehaving, made the situation untenable.

116. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiffs employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

117. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

118. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

119. Plaintiff requests relief as described in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

Plaintiff, CARLOTTA COLLINS, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: June 21, 2023

Respectfully Submitted,

/s/ Austen J. Shearouse
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)
CARLA D. AIKENS, P.C.
*Attorneys for Plaintiff*
615 Griswold Street, Ste. 709
Detroit, MI 48226
austen@aikenslawfirm.com