UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOTTA COLLINS,

                Plaintiff,                    Case Number 23-11478

v.                                        Honorable David M. Lawson

CITY OF DETROIT, MIHAI FACAEANU,
and CARLOS VAZQUEZ,

                Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT AND DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE

Plaintiff Carlotta Collins filed a complaint alleging that she was treated poorly at her job with the City of Detroit, which she attributes to discrimination based on her race (African American) and her gender (female). She complained to the Equal Employment Opportunity Commission but found no relief. While this case was pending, the City fired her, and the Court permitted her to file a second amended complaint alleging that the termination was an additional adverse employment action. After the extended discovery period closed, the defendants filed the present motion for summary judgment. The motion is fully briefed, and oral argument will not assist in its resolution. The Court will decide the motions on the papers submitted. E.D. Mich. LR 7.1(f)(2). Because the plaintiff has not offered sufficient evidence to create a material fact question connecting her allegations of adverse employment action to any discriminatory or retaliatory motivation by the defendants, the Court will grant the motion and dismiss the case.

I.

Plaintiff Carlotta Collins began working for the City of Detroit in the Finance Division in 2002 as a junior clerk. Carlotta Collins dep., ECF No. 26-2, PageID.331. She advanced through

several other clerical positions, and on March 18, 2022, she transitioned to a role as a Customer Service Specialist Level 3, working in the Billing Department of the Detroit Water and Sewerage Department (DWSD). *Id.* at PageID.335. Defendant Carlos Vazquez was the plaintiff's immediate supervisor at DWSD, and defendant Mihai Facaeanu is the manager of the DWSD Billing Department.

The plaintiff testified that for about a year, from August 2021 through August 2022, she suffered a pattern of disrespectful, belittling, dismissive, and unfair treatment by Mr. Facaeanu. Collins dep. at PageID.336-37. In August 2021, the plaintiff had a one-on-one conversation with Facaeanu during which she complained that she had been treated unfairly because she is a black woman, and Facaeanu's response was belittling and dismissive of her complaints. *Id.* at 337-38. Collins further testified that she was wrongfully suspended, denied a merit pay increase, denied a promotion, and given a "deplorable" performance evaluation. *Id.* at PageID.338-39.

In June 2022, defendant Vazquez completed the performance evaluation that Collins characterized as "deplorable." Collins dep. at PageID.341; *see* Performance Evaluation dated Mar. 28, 2022, ECF No. 26-6, PageID.460-65. Collins testified that she believed that Vazquez gave her a poor evaluation in retaliation for her filing a written complaint with the human resources office on May 19, 2022, alleging that she suffered race and sex discrimination; and that it also was retaliation for her request to Vazquez's superior seeking authorization to work remotely due to the hostile treatment she had suffered. *Id.* at PageID.347-49. Collins testified that she received the negative evaluation only after she returned from a leave of absence in June 2022, and that she believed that Vazquez attempted to backdate the evaluation form to March 2022 in order to conceal the fact that the low evaluation was prompted by her discrimination complaint that was lodged

with HR on May 19, 2022. *Id.* at PageID.388-89.  The plaintiff said that due to the low evaluation, she was disqualified from receiving a merit pay increase for the 2022-23 fiscal year. *Id.* at 393.

Collins also contends that in March 2023, the defendant's HR staffer, Aisha Perry, attempted wrongfully to suspend the plaintiff for 10 days. *Id.* at PageID.340.  The plaintiff conceded that she did not know if Facaeanu or Vazquez were involved in the attempted suspension. *Id.* at PageID.341.  Collins testified that she believed the attempt to suspend her on the basis of a supposed failure to submit to drug testing was improper because the applicable employment policy only would require a drug test if an employee was on leave for more than 30 days, and the plaintiff's medical leave from May 2 through May 30, 2022 (returning to work on June 1, 2022), was not an absence of "more than 30 days." *Id.* at PageID.364-65.

In July 2023, Collins asked defendant Vazquez about being promoted from Level 3 to Level 4 in her job, but that promotion never occurred.  Collins dep. at PageID.339-40.  Collins conceded that she merely "inquired" with Vazquez about the possibility of a promotion, but she did not apply for an advancement in position, and she did not see any open job posting for a higher level position in her department. *Id.* at PageID.340.

The plaintiff conceded that she does not believe that the negative evaluation or denial of merit pay increase were imposed because of her race or sex, and she instead insisted that the negative treatment was retaliatory for her complaints about unfair treatment.  Collins dep. at PageID.346-47, 350-51.  The plaintiff testified that she inquired three times about the Level-3-to-4 promotion, and Vazquez gave various reasons for why it did not occur, telling her on the first occasion that he would "talk about it with Mihai" and get back to her, and the second time that annual increases in grade already had occurred for the year, and the third time that the interaction was "just a conversation" in July 2023, to which Vazquez never responded. *Id.* at PageID.352-53.

The plaintiff again conceded that she did not believe that the failure to give a definitive explanation for not promoting her was not related to her race, but she believed that it was related to her gender, and that it was in retaliation for filing the instant lawsuit. *Ibid.* Collins testified that she believes a clear gender pay disparity in the Billing Department is shown by the fact that Facaeanu and Vazquez — both male — are the only staff who hold higher paid supervisory positions, compared with Collins and three female co-workers — Danielle Wooten, Deidra Cook, and Oberya Colon — all of whom hold lower paying and subordinate customer service specialist positions. *Id.* at PageID.354-56.

Finally, the plaintiff testified that she believed that the workplace environment became hostile after her May 2022 HR complaint of discrimination was submitted, and that the hostility was evidenced by (1) the requirement that she take sick leave to submit to a drug test upon her return to work on June 1, 2022, (2) Vazquez's low performance evaluation of the plaintiff in June 2022, and (3) Facaeanu's exclusion of the plaintiff from departmental meetings and routine daily interactions discussing work in progress. Collins dep. at PageID.369-72.

On May 24, 2024, while this litigation was pending, and within several days after the defendant's principal witnesses were deposed, the plaintiff was terminated. *See* Corrective Disciplinary Action Form dated May 24, 2024, ECF No. 32-4, PageID.725-26. The disciplinary notice and associated statement of reasons indicated that on May 22, 2024, Collins sent a message to Facaeanu via Microsoft Teams stating, "I am working from home today." *Id.* at 726. Facaeanu responded asking, "Who has approved for you to work from home today?" Plaintiff then said, "I'm requesting to work from home. If not, just say no. Thank you." Facaeanu replied, "Since you have started working from home already, continue to work from home." Collins followed up with a further message stating that she would work only until 10:45 a.m. and would take FMLA

leave for the remainder of the day.  *Ibid.*  The narrative indicates that, despite logging four hours on her timesheet for May 22, 2024, the plaintiff in fact performed no work that day.  In particular, the notice states that the plaintiff's "main assignment of completing the editing of current billing cycles was left unprocessed," and that the assignment was due by May 22, 2024 at noon, due to the necessity of the task being completed so that billing notices for the accounts involved could be generated at midnight on the same date.  *Ibid.*  The notice also indicates that after the plaintiff stated that she was taking sick leave in the afternoon, Facaeanu responded that she had no sick leave available, but the plaintiff left her workstation unattended and did not return to work during the afternoon despite having no available leave time.  *Ibid.*

At a second deposition taken after the termination, Facaeanu testified that he "was not part of the decision" to terminate the plaintiff, and that he never saw the notice of corrective action. Mihai Facaeanu 2d dep., ECF No. 35-14, PageID.1072.  He said that he received a call from the defendant's HR Director, Patricia Thornhill, who told him that a meeting was to occur the same day with Collins and a union representative, and that Collins "may be terminated."  *Ibid.*  Facaeanu testified that his understanding was that the termination was based on "leaving the workplace . . . without permission" and without available leave time to cover the absence.  *Id.* at 1071.  Thornhill also was deposed and testified that the ground for the termination was "falsification of time records."  Patricia Thornhill dep., ECF No. 35-15, PageID.1090.  Thornhill said, based on her investigation, "according to [the plaintiff's] manager and IT she didn't perform any work" on the date in question.  *Id.* at 1091.  Thornhill said that the investigation was prompted by an email she received from Facaeanu including screenshots from the defendant's electronic billing system ("Inquesta") indicating that the plaintiff had not completed her assigned tasks on May 22, 2024. *Id.* at 1094.  Facaeanu reported the suspected violation to Thornhill on that occasion because at the

time the plaintiff's immediate supervisor (Vazquez) was out on vacation.  *Ibid.*  Thornhill said that she "followed up with IT," and received "confirmation" from IT that Inquesta showed that the plaintiff had not performed any work.  Thornhill could not recall, however, who she spoke to in IT that conveyed the confirmation.  *Id.* at 1095.  Thornhill insisted that "any work that [Collins] performed would have been captured" by the Inquesta system, but she conceded that she did not know whether Inquesta would log actions such as "opening a file" or "sending an e-mail" which the plaintiff might have performed.  *Id.* at 1096-97.

The plaintiff filed her initial complaint on June 21, 2023, and a first amended complaint was filed on October 11, 2023.  The defendants' first motion for summary judgment was filed after discovery closed, and the plaintiff subsequently filed a motion for leave to file a second amended complaint.  The plaintiff's first amended complaint pleaded claims of Equal Protection violations based on race and sex and First Amendment retaliation via 42 U.S.C. § 1983, as well as claims of race and sex discrimination and engendering a hostile work environment under the State of Michigan's Elliott-Larsen Civil Rights Act (ELCRA).  The Court held a hearing on the first MSJ and granted the motion in part, dismissing the claim of First Amendment retaliation (Count III) with prejudice on the ground that the plaintiff abandoned the claim by failing to defend it in her opposition, but granting leave for the plaintiff to file a second amended complaint to state new facts about her termination.  The second amended complaint repleaded all of the same facts, adding a new allegation of termination, and restated all of the previously presented causes of action — including a purported repleading of the dismissed Count III — also adding new counts for discriminatory retaliation under ELCRA and an alleged violation of the Michigan Whistleblowers Protection Act, Mich. Comp. Laws § 15.361 *et seq.*

The current operative pleading — the second amended complaint — alleges the denial of equal protection of the laws due to race via 42 U.S.C. § 1983, as to defendants Vazquez and Facaeanu (Count I); denial of equal protection of the laws due to gender via 42 U.S.C. § 1983, as to defendants Vazquez and Facaeanu (Count II); violation of the First Amendment based on retaliation for speaking out via 42 U.S.C. § 1983, as to defendants Vazquez and Facaeanu (Count III); discrimination on the basis of race in violation of ELCRA (Count IV); discrimination on the basis of sex or gender in violation of the Michigan Elliott-Larsen Civil Rights Act (Count V); Creating a hostile workplace environment in violation of the ELCRA (Count VI); retaliation in violation of ELCRA against all defendants (Count VII); and violations of the Michigan Whistleblowers Protection Act against all defendants (Count VIII).

The defendants seek summary judgment in their favor on all counts.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in

dispute. *Id.* at 558. (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

### A.

In their first motion for summary judgment, the defendants challenged Count III of the amended complaint, which pleaded a claim for unlawful retaliation in violation of the First Amendment.  The plaintiff failed to defend against that argument, and the Court granted the motion as to that count and dismissed it with prejudice.  The plaintiff repleaded that count with identical language in the second amended complaint.  In her opposition to the present motion, the plaintiff again consents to the dismissal of Count III of the second amended complaint.  The Court will grant the defendants' motion as to that count and dismiss it, again, with prejudice.

### B.

The defendants argue that the discrimination counts under federal and state law — Counts I, II, IV, and V — must be dismissed because the plaintiff has not offered any evidence that any supposed adverse employment action would not have occurred "but for" her status as an African-American woman, and at her deposition she admitted that none of the complained-of actions were motivated by her race or gender.

"In order to properly make out a claim under § 1983, a plaintiff must demonstrate that she has been deprived, by one acting under color of state law, of a right secured by the Constitution or Federal laws." *Yerkes v. Ohio State Highway Patrol*, No. 22-3030, 2022 WL 17753528, at *4 (6th Cir. Dec. 19, 2022) (citing 42 U.S.C. § 1983; *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199,

1202 (6th Cir. 1984)). "In general, the Sixth Circuit reviews constitutional discrimination claims alleging violation of Equal Protection under § 1983 in a similar manner as Title VII discrimination claims, and looks at Title VII precedent in analyzing § 1983 discrimination claims." *Ibid.* (citing *Weberg v. Franks*, 229 F. 3d 514, 522 (6th Cir. 2000)). "In a § 1983 discrimination case, the plaintiff must prove that 'the employer made an adverse employment decision 'with a discriminatory intent and purpose.'" *Ibid.* (quoting *Boger v. Wayne County*, 950 F.2d 316, 324-25 (6th Cir. 1991); *Charles v. Baesler*, 910 F.2d 1349, 1356-57 (6th Cir. 1990)).

When, as here, the plaintiff does not support her discrimination claim with direct evidence, courts employ "the '*McDonnell Douglas* burden-shifting approach' to evaluate their allegations." *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024) (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)). "The plaintiff must sufficiently show 'that [s]he [] suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination.'" *Ibid.* (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)). "To make out this prima facie case, the plaintiff must 'show that [s]he was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly situated nonminority employees.'" *Ibid.* (quoting *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016)).

The Sixth Circuit recently has "suggested that the Equal Protection Clause and Title VII have different texts that may create different legal rules," and that "the text of the Elliott-Larsen Civil Rights Act likewise differs from both the Equal Protection Clause and Title VII." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 885 (6th Cir. 2024) (citing *L.W. v. Skrmetti*, 83 F.4th 460, 484-85 (6th Cir. 2023); *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014);

- 9 -

*Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 917-18 (6th Cir. 2014)).  Nevertheless, where "the parties agree that the three provisions . . . have the same reach in [a particular] case," the Court may so assume and proceed to analyze the claim by applying prevailing rules of decision recognized by the Title VII cases on point.  *Ibid.*  In this case, the parties have not pointed to any dispositive distinctions between the several strands of prevailing case law.

The parties do not dispute that the plaintiff's status as an African-American woman establishes her membership in protected classes based on her race and gender.  The defendants contend that the plaintiff has failed to prove the existence of any "adverse action," but her original allegations and testimony — even leaving aside the recent termination — easily pass the low bar of "show[ing] some harm respecting an identifiable term or condition of employment."  *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024) (cleaned up).  At a minimum, the alleged imposition of a severely negative performance review which precipitated the denial of a pay increase and merit promotion are sufficient to make such a showing.  The plaintiff has identified the "terms" of her employment that were affected by the negative review and resulting consequences — her pay and job grade — and she has alleged "some harm" in the form of being denied advancement and higher pay.  She does not need to prove that any such harm surpasses a threshold of "materiality," nor does she need to show that the harm was either "economic," or "tangible."  *Blick*, 105 F.4th at 885; *see also Muldrow*, 601 U.S. at 359 ("Muldrow need show only some injury respecting her employment terms or conditions.  The transfer must have left her worse off, but need not have left her significantly so."); *id.* at 355-56 ("Take just a few examples from the caselaw.  An engineering technician is assigned to work at a new job site — specifically, a 14-by-22-foot wind tunnel. . . .  A shipping worker is required to take a position involving only nighttime work. . . .  And a school principal is forced into a non-school-based administrative role

supervising fewer employees. . . . All those employees suffered some injury in employment terms or conditions (allegedly because of race or sex).  Their claims were rejected solely because courts rewrote Title VII, compelling workers to make a showing that the statutory text does not require.").

Nevertheless, all of the plaintiff's race and gender discrimination claims in this case fail because the plaintiff testified herself out of the case on these claims by repeatedly admitting at her deposition that none of the alleged mistreatment was caused by her sex or gender.  Carlotta Collins dep., ECF No. 19-2, PageID.148-49 ("Q. Do you believe that your employee — what you termed as a deplorable employee evaluation was because you were black?  A. No, I believe it was retaliatory. . . .  Q. Did you believe that what you termed as a deplorable employee evaluation that was completed by Carlos and Mihai, do you believe that he gave you those marks because you were African-American?  A. No.  Q. Do you believe that — same question for because you were a woman? A. No."); *id.* at 152-53 ("Q. Just going back a little bit, do you believe that you were denied a merit increase in 2022 because of your status as an African-American?  A. No.  Q. Do you believe that you were denied a merit increase because of your status as a woman?  A. No.  Q. Do you believe that you were denied the merit increase in retaliation for something?  A. I do.  Q. And what do you believe you were denied the merit increase in retaliation for?  A. For expressing my concerns of how I was being treated by management."); *id.* at 155-56 ("Q. Do you think that you were not provided a more definitive response [to the request for an in-series promotion] because you're African-American?  A. No.  Q. Do you believe you were not provided a more definitive response because you're a woman?  A. Yes."); *id.* at 177-78 ("Q. Do you believe that [Mr. Facaeanu's] [disrespectful] tone was directed at you because you were African-American?  A. No.  Q. Do you believe that his tone that he used — do you believe he used that tone because you were a woman?  A. Yes.  Q. Do you believe that he used that tone in retaliation for anything?

A. Yes.  Q. Why do you believe he used that tone because you were a woman?  A. I don't know.");
*id.* at 215 ("Q. Did anyone make any statements to you that you didn't like about you being an
African-American?  A. No.  Q. What about being a woman?  A. No."); *id.* at PageID.140 ("Q. Can
you tell me instances where you were not treated fairly as a black employee — black female
employee?  A. No.  Q. You don't have any recollection of any instances?  A. Not right now, no.").

The nearest that the plaintiff's testimony approaches support for any inference of gender-
based discrimination was during the part of her deposition where she testified that in the Billing
Department all of the frontline Customer Service Specialist positions were filled by herself and
female coworkers, while her two superiors (defendants Facaeanu and Vazquez) were men who
were paid more than the frontline staff.  Collins dep. at PageID.156-58.  However, it is undisputed
that the defendants were in supervisory roles distinct from the front-line customer service specialist
positions, and the plaintiff has not submitted any evidence suggesting that either she or any female
co-worker ever applied for and was refused hiring or promotion to a supervisory role in the
department.  *See* Collins dep. at PageID.204 ("Q. Did you apply for the position that Carlos has
now?  A. No.").  The sole allegation that male staff in supervisory roles were paid more than female
employees in subordinate roles is insufficient, standing alone, to support any inference of gender-
based discrimination, because the persons being compared are, by definition, not similarly situated.
"The significance of management status has been recognized by [the Sixth Circuit] in several cases
in which we have held that supervisory and non-supervisory personnel are not similarly situated."
*White v. Duke Energy-Kentucky, Inc.*, 603 F. App'x 442, 452 (6th Cir. 2015) (Griffin, J.,
dissenting) (collecting cases); *see Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d
911, 917 (6th Cir. 2013) ("Ms. Guidry was [] differently situated in the management structure of
the store [and this] uncontested finding[] mitigate[s] against considering Ms. Guidry as similarly

situated to Ms. Martinez."); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) ("The following distinctions between Pierce and Kennedy are undisputed: Pierce was a supervisor and Kennedy was not; Pierce had responsibility over three offices, whereas Kennedy was an 'office administrator' with no supervisory control over any other employees; Pierce evaluated employees, including Kennedy, while Kennedy evaluated no one; and, unlike Kennedy, Pierce attended agency group meetings and was responsible for enforcement of the company's sexual harassment policy."), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 148 (2000), *as recognized in Carter v. Toyota Tsusho America, Inc.*, 529 F. App'x 601, 608-10 (6th Cir. 2013); *see also Rutherford v. Britthaven, Inc.*, 452 F. App'x 667, 672 (6th Cir. 2011) ("[N]one of the employees identified by Rutherford had supervisory responsibilities. Indeed, all three of these employees were under Rutherford's supervision. We have previously held supervisory and non-supervisory employees to not be similarly situated."); *Quinn-Hunt v. Bennett Enterprises, Inc.*, 211 F. App'x 452, 459 (6th Cir. 2006) ("Quinn-Hunt also compares herself to Lori Stickley, MOD for the hotel's second-shift operations. But Stickley is a supervisory employee, and Quinn-Hunt is not.").

It is widely recognized that a plaintiff's admissions at deposition that she has no evidence to sustain a crucial element of her *prima facie* case are sufficient to justify summary judgment for a moving defendant. *E.g.*, *Brooks v. Invista*, No. 05-328, 2007 WL 672473, at *4 (E.D. Tenn. Feb. 28, 2007) ("Plaintiff made admissions during her deposition that were fatal to all of her claims under Title VII. Plaintiff admitted Defendant never hired anyone to replace her, and her husband assumed her duties when she left. Plaintiff also admitted she knew of no one who was similarly situated and was not fired. These two admissions proved Plaintiff did not have any evidence to establish an element of her prima facie case for race discrimination. Plaintiff also admitted she

was never subjected to any racial comments and did not believe she worked in a hostile work environment.   These admissions proved Plaintiff had no basis for bringing a hostile work environment claim."); *see also Wilson v. Middle Tennessee State Univ.*, No. 19-0798, 2021 WL 694181, at *4 (M.D. Tenn. Feb. 23, 2021), *R&R adopted*, 2021 WL 981553 (M.D. Tenn. Mar. 16, 2021) ("Defendants are entitled to rely upon the admissions obtained by written discovery in the same manner as they would be entitled to rely upon an admission by Plaintiff under questioning at a deposition that he has no proof or evidence to support his claims.   Although the admission requests sought by Defendants were directed at the ultimate issue of whether Plaintiff has proof and evidence to support his claims, they did not require Plaintiff to admit to matters of law or legal conclusions or to matters that are not capable of being admitted or denied."); *Roebuck v. Summit Cnty. Dep't of Jobs & Fam. Servs.*, No. 13-2816, 2014 WL 2442650, at *4 (N.D. Ohio May 30, 2014) ("[A]n admission by a plaintiff that she cannot perform an essential function of her job without accommodation negates the qualified individual element of an ADA claim.") (collecting cases); *Newcomb v. Allergy & ENT Assocs. of Middle Tennessee, P.C.*, No. 10-1230, 2013 WL 3976627, at *3 (M.D. Tenn. Aug. 2, 2013) ("[T]he Court's analysis turned upon Plaintiff's fatal summary judgment admissions: that her inability to walk and work arose from a temporary hairline fracture; that her fracture was fully healed a year before her termination and does not form the basis of her ADA claim; that she was under no medical restrictions and had no concerns about excessive walking from spring 2008 through the date of her termination; and that at the relevant time she had no difficulty working or caring for herself. Case law is not required for the Court to conclude that the facts as stipulated at summary judgment preclude a finding of actual disability within the meaning of § 12102(1)(A)."); *Anderson v. Caver*, No. 07-0073, 2008 WL 160781, at *8 (M.D. Tenn. Jan. 15, 2008) ("To the extent that the plaintiff contends that the defendant engaged

in racial profiling in violation of his equal protection rights, his own deposition testimony negates such a claim as he admits that the defendant did not herself engage in any such behavior.").

As to the hostile work environment claims, "Title VII 'does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination because of [race or sex].'" *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 685 (6th Cir. 2024) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)) (cleaned up).  To make out the *prima facie* case, "a plaintiff may offer evidence of general hostility to a certain [race or gender] in the workplace, or comparative evidence about how the alleged harasser treated members of both [races or genders]." *Ibid.* (quoting *Oncale*, 523 U.S. at 80-81).

"Because hostile-work-environment claims arise out of the same statutory language as disparate-treatment claims, *Muldrow*'s holding that Title VII does not require plaintiffs to show 'significant' harm applies to both types of claims." *McNeal v. City of Blue Ash*, No. 23-3180, 2024 WL 4262532, at *12 (6th Cir. Sept. 23, 2024) (citing *Muldrow*, 601 U.S. at 355).  "Instead, the employer's discriminatory action — or, as is the case here, the work environment — needs to produce 'some harm respecting an identifiable term or condition of employment.'" *Ibid.* (quoting *Muldrow*, *supra.*).  "Thus, when we consider whether a hostile-work environment was severe or pervasive enough to violate Title VII, we effectively ask whether it left an employee 'worse off respecting employment terms or conditions.'" *Ibid.*

The defendants argue that the plaintiff has failed to identify sufficiently "hostile" goings on to sustain a *prima facie* case.  Because the *Muldrow* standard enunciated above applies equally to hostile work environment claims, the plaintiff is not required to allege any particular level of egregious mistreatment, only to describe a totality of instances sufficient to alter the conditions of her employment in some way.  "[T]he 'totality of the circumstances' approach requires us to

- 15 -

examine [the] treatment cumulatively to see whether it created an atmosphere of hostility that was more than the sum of its parts. [The plaintiff] can defeat summary judgment if the incidents and conduct [s]he alleges, taken together, are pervasive enough to alter the conditions of his employment, even if each is only irritating in isolation." *McNeal v. City of Blue Ash*, --- F.4th --, No. 23-3180, 2024 WL 4262532, at *13 (6th Cir. Sept. 23, 2024) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999)).

The Sixth Circuit has held that evidence of such things as relentless scrutiny of minor transgressions, imposition of discipline for policy violations for which other staff were not admonished, consignment to menial tasks beyond the scope of the plaintiff's conventional job duties, and onerous routines such as requiring unreasonably frequent "status updates," where the cumulative effect of the many minor persecutions is shown to affect the employee's well being, can constitute sufficient evidence of an actionably hostile environment. *McNeal*, 2024 WL 4262532, at *13. The plaintiff has pointed to sufficiently "hostile" circumstances in this case including her allegations that she was (1) subjected to an unfounded negative performance evaluation, (2) denied a merit promotion and pay increase, (3) subjected to an attempted improper application of agency policy requiring that employees returning from leave undergo a drug test, when she was not absent for the required number of days to trigger the return testing requirement, (4) excluded from daily routine meetings and typical daily interactions with her supervisor concerning her job duties, and (5) eventually terminated.

Nevertheless, in the same way that she must establish causation for her discrimination claims, the plaintiff also must show a causal link between her race or gender and the alleged hostile environment. In this case, as discussed above, the plaintiff admitted repeatedly at her deposition

that she was *not* mistreated "because of" her race or sex, insisting to the contrary that she believed the hostile treatment was "retaliation" for lodging a complaint about discrimination.

The same fate befalls the plaintiff's ELCRA claims, which likewise require the plaintiff to establish a causal link between the protected characteristic and alleged discrimination. "When a plaintiff seeks to prove intentional discrimination through circumstantial evidence, courts generally evaluate . . . ELCRA discrimination claims under the same standard as Title VII of the Civil Rights Act of 1964." *Gray v. AutoZoners, LLC*, No. 22-1069, 2022 WL 16942609, at *3 (6th Cir. Nov. 15, 2022) (citing *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004); *Perry v. McGinnis*, 209 F.3d 597, 602 n.3 (6th Cir. 2000)). Just like Title VII, "ELCRA [] require[s] [the] plaintiff to establish that race is a 'but-for' cause of the injury." *Ibid.* For the reasons discussed above, the plaintiff has failed to do so here. Counts I, II, IV, V, and VI will be dismissed.

C.

Generally, federal courts will analyze retaliation claims brought under ELCRA "under the same framework as Title VII claims." *Culton v. Unifi Aviation, LLC*, No. 22-12102, 2025 WL 289178, at *3 (E.D. Mich. Jan. 24, 2025) (citing *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 47-48 (6th Cir. 2020)).

Again, the familiar *McDonnell Douglas* burden shifting test is used to assess a circumstantial case. *Huang v. Ohio State Univ.*, 116 F.4th 541, 561 (6th Cir. 2024) (citing *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019)). "Under that framework, [the plaintiff] must first make a *prima facie* case by showing (1) she engaged in a Title VII protected activity, (2) her employer knew about it, and (3) her employer took an adverse employment action against her because of [the] protected activity." *Ibid.* (citing *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d

- 17 -

400, 419 (6th Cir. 2021)). If the plaintiff makes a *prima facie* showing, then the defendant will have the opportunity "to assert a nondiscriminatory reason for its actions," and to defeat such a defense the plaintiff "would have to show pretext." *Ibid.* (citing *Redlin*, 921 F.3d at 613-14).

Although the proof of causation here is very thin, the main difficulty for the plaintiff here is that she has offered no evidence to rebut the defendant's proofs that she was terminated for entering a false time record by logging hours worked on May 22, 2024 but performing none of her assigned tasks that were scheduled to be completed on that date.

The Notice of Disciplinary action stated that, despite representing on her time sheet that she worked four hours on May 22, 2024, "none of [the plaintiff's] assigned work [due on that date] was completed," and in particular that she failed to complete billing record reviews that were necessary in order for bills to be sent by midnight on the same date. *See* Notice of Corrective Disciplinary Action, ECF No. 32-4, PageID.726. That evidence plausibly supports the defendant's position that, although the plaintiff undisputedly logged hours worked on the date in question, she failed to perform any tasks within the usual scope of her duties.

"Typically, a plaintiff may establish pretext by proving that an employer's proffered reasons (1) have no basis in fact, (2) did not actually motivate the adverse employment action or (3) are insufficient to motivate discharge." *Campbell-Jackson v. State Farm Ins.*, No. 23-1834, 2024 WL 4903807, at *8 (6th Cir. Nov. 27, 2024) (citing *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012)). "'But these are not the only ways that a plaintiff can establish pretext.'" *Ibid.* (quoting *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020)). "Rather, these methods are merely a convenient way to answer the ultimate inquiry: did the employer fire the employee for the stated reason or not?" *Ibid.* (quoting *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2012)) (cleaned up). "To answer this question, a plaintiff

need only present 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her.'" *Ibid.* (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). The Sixth Circuit has "observed that '[t]his burden is not heavy.'" *Ibid.* (citing *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir. 2020)).

The defendant's Corrective Disciplinary Action Policy classifies "[m]isrepresentation or falsification of . . . time records" as a "Group IV" offense subject to penalties ranging from 30-day suspension up to "Immediate Discharge." Corrective Disciplinary Action Policy, ECF No. 32-7, PageID.830. The plaintiff has not submitted any evidence suggesting that discharge was not an allowed or appropriate sanction under the Disciplinary Policy for a first offense time record violation, or that any other employee found to have committed a similar infraction was not terminated.

The plaintiff contends that the stated grounds for the termination were insincere or fabricated. "This method [of showing pretext] is 'essentially an attack on the credibility of the employer's proffered reason and consists of showing that the employer did not actually have cause to take adverse action against the employee based on its proffered reason.'" *Morgan v. Interstate Res., Inc.*, No. 23-3866, 2024 WL 3221394, at *4 (6th Cir. June 28, 2024) (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). "But if 'the employer can demonstrate an honest belief in its proffered reason,' meaning that it 'reasonably relied on particularized facts that were before it at the time the decision was made,' then no inference of pretext is warranted." *Ibid.* And where a plaintiff "offers nothing other than [her] own testimony to prove [pretext] [her] 'bare assertion that [the defendant's] proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact.'" *Ibid.* In this case, the plaintiff presents no evidence at all suggesting either that the defendant's stated

ground for the termination had no basis in fact, or that the failure to perform any tasks within the usual scope of her duties on a day when she logged four hours of time worked did not constitute a valid reason that the defendant reasonably and legitimately relied on when it decided to terminate her employment.

The plaintiff attempts to insinuate doubt about the credibility of the stated basis for the termination based on Collins's admission that the defendant's Inquesta billing information system would not necessarily capture the performance of such tasks as sending emails or "opening files." However, the plaintiff has not presented any record evidence — either through her own testimony or otherwise — that she engaged in any such activities on the date in question. She also has not presented any evidence suggesting that she actually completed any of her assigned tasks that were due to be completed on the date in question when she logged four hours of work on her timesheet. In short, the plaintiff has put forth no record evidence calling into doubt the defendant's stated basis for the termination, and she has not argued that false reporting on her time sheet was not a sufficiently serious offense to warrant immediate discharge.

### D.

The parties do not address the substantive elements for the plaintiff's Whistleblowers Protection Act claim. Instead, the defendants contend that the count must be dismissed because the second amended complaint docketed on November 2, 2024 was filed beyond the applicable 90-day limitations period following the May 2024 termination, and the plaintiff's motion for leave to file a second amended complaint was not accompanied by any proposed amended pleading setting forth a WPA claim, nor did it make any mention of bringing a new cause of action under the WPA.

The parties do not dispute that a 90-day limitations period applies to the claim.  *See Hite v. Norfolk Southern Railway Co.*, 181 F. App'x 514, 516 (6th Cir. 2006) ("[T]he Michigan Whistleblowers' Protection Act [has a] limitations provision, which provides that '[a] person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within ninety days after the occurrence of the alleged violation of this act.'" (quoting Mich. Comp. Laws § 15.363)).  The plaintiff does not dispute the applicability of that statutory time bar, and she opposes the motion solely on the ground that her motion for leave to file a second amended complaint was filed within 90 days after her termination.  However, as the defendant points out, the plaintiff's motion for leave to amend did not include any proposed amended pleading, as mandated by the applicable rules of court.  *See* E.D. Mich. LR 15.1. Moreover, the motion itself makes no mention of any WPA claim and indicates only an intent to amend for the purpose of stating facts that would "reflect the termination as another instance of [the alleged] discrimination."  Plf.'s Mot. to Amend at 6, ECF No. 20 (*PageID reference unavailable*).

Curiously, the plaintiff does not argue that the newly pleaded WPA claim that was first presented to this Court in November 2024 is rescued by relation back to any earlier or original pleading, perhaps because the undisputed record shows that the doctrine cannot salvage a concededly untimely claim here.  "Under Rule 15, a plaintiff may amend her pleading to add a new claim or defense that would otherwise be time-barred when the amended pleading 'relates back' to the original timely-filed pleading."  *Gibbens v. OptumRx, Inc.*, 778 F. App'x 390, 394 (6th Cir. 2019) (citing *Krupski v. Costa Crociere SpA*, 560 U.S. 538, 541 (2010)).  "A pleading amendment 'relates back' to the original pleading when the new claim arises 'out of the conduct, transaction, or occurrence set forth' in the original pleading."  *Ibid.* (citing *Mayle v. Felix*, 545

U.S. 644, 656 (2005); Fed. R. Civ. P. 15(c)(1)(B)).  The factual basis for the WPA claim alleged in the second pleading is that the plaintiff complained about unlawful discrimination and then was terminated in violation of the statute.  However, the original pleading did not include any factually similar claim, nor did it recite any factual basis overlapping with the fresh charge of retaliatory discharge — unsurprising since the termination did not occur until more than a year after the lawsuit was initiated.  Moreover, the plaintiff never submitted any timely proposed amended complaint alluding in any way to a cause of action under the WPA, and the motion to amend did not mention any such claim, only asserting that the plaintiff wanted to allege additional facts to support her previously pleaded claims of unlawful discrimination, by alleging new facts relating to the distinct and subsequent occurrence of an allegedly discriminatory termination.

Under the circumstances, where the plaintiff essentially concedes that her claim was filed out of time, and she has not argued that the untimely claim should relate back to the filing date of the original or first amended pleading, the untimely Count VIII must be dismissed.

III.

The plaintiff has not offered sufficient facts in the record to create a material fact question on all the elements of her claims stated in Counts I, II, IV, V, VI, or VII of the second amended complaint.  An identical Count III of that pleading was dismissed earlier, and the plaintiff has not offered any argument or explanation justifying that count going forward.  Count VIII of the second amended complaint was filed out of time.

Accordingly, it is **ORDERED** that the defendants' second motion for summary judgment (ECF No. 32) is **GRANTED**.

It is further **ORDERED** that the Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  April 4, 2025